IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA SOLESBEE,<br><br>   **Plaintiff,**<br><br>vs.<br><br>COUNTY OF INYO, a governmental entity, INYO COUNTY INTEGRATED WASTE MANAGEMENT,  a governmental entity, ROBERT MAYHUGH, an individual, and DOES 1 through 10, inclusive;<br><br>   **Defendants.** | 1:13-cv-1548  AWI JLT<br><br><br>**MEMORANDUM OPINION AND ORDER ON MOTION OF COUNTY OF INDIO TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>**Doc. # 22** |

This is an action for damages by plaintiff Tanya Solesbee ("Plaintiff") against defendants County of Inyo ("County"), Inyo County Integrated Waste Management, and Robert Mayhugh ("Mayhugh") (collectively, "Defendants").  Plaintiff alleges claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and pursuant to 42 U.S.C. § 1983. Plaintiff alleges an additional four claims for relief pursuant to California law.  Currently before the court is the motion of County to dismiss claims against it and Inyo County Integrated Waste Management (the "County Defendants") pursuant to Rule 12(B) (6) of the Federal Rules of Civil Procedure.  Jurisdiction exists pursuant to 28 U.S.C. § 1331.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

At the time relevant to the facts giving rise to this action, Plaintiff was a participant in a county jail work release program called the "Work Release Alternative Program ("WRAP"), which was established by County pursuant to California Penal Code § 4024.2.  Defendant served

her WRAP obligation at Defendant Integrated Waste Management, which is a political subdivision of County.  Whether Plaintiff was "employed" during the term of her commitment to WRAP within the meaning of federal and state statutes protecting the rights of workers is a central issue in Defendant County's motion to dismiss.  Plaintiff's complaint alleges Mayhugh was a "supervisor" for Integrated Waste Management.  The complaint is ambiguous as to what Plaintiff intended by use of the term "supervisor."

Plaintiff's complaint alleges that during the short time Plaintiff was working at Integrated Waste Management, she was subjected to conduct by Mayhugh amounting to sexual assault and/or sexual battery.  Plaintiff alleges she experienced three such instances of sexually inappropriate or assaultive behavior on the first day of her placement at Integrated Waste Management.  As a result of the trauma suffered, Plaintiff did not return the following day and she was eventually terminated from WRAP participation.  For purposes of this motion, the adequacy of Plaintiff's allegation of sexual misconduct by Mayhugh is not challenged.  As a consequence of Mayhugh's conduct, Plaintiff has alleged, in her first and third claims for relief, violation of Title VII under theories of hostile work environment and quid pro quo sexual harassment, respectively.  In her fifth claim for relief Plaintiff alleges "Sexual Discrimination Under Color of State Law" pursuant to 42 U.S.C. § 1983.  Although stated somewhat unusually, it appears that Plaintiff's fifth claim for relief is intended to allege violation of substantive due process rights under the Fourteenth Amendment in violation of 42 U.S.C. § 1983.  The court construes Plaintiff's fifth claim for relief accordingly.

Plaintiff's second, fourth, sixth and seventh claims for relief allege, in order, sexual harassment in violation of Cal. Gov. Code § 12940(j), sexual discrimination in violation of Cal. Gov. Code § 12940(a), violation of the Unruh Civil Rights Act Cal. Civil Code § 51 et seq., and Intentional infliction of emotional distress under California common law.  Plaintiff's complaint was filed on September 24, 2013.  County's motion to dismiss was filed on March 14, 2014.  Plaintiff's opposition was filed on April 14, 2014 and Defendant's reply was filed on April 21, 2014.  The matter was taken under submission as of April 28, 2014.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

/ /

**DISCUSSION**

**I. Preliminary Issues**

As an initial matter, the court notes that Integrated Waste Management is a political subdivision of the County of Inyo. When a subdivision of a county is sued, the suit is construed as being against the county; the subdivision is not a proper party defendant. See Morris v. State Bar of California, 2010 WL 4977677, *3 (E.D. Cal. 2010) (the District Attorney's Office is not a proper defendant because it is a "sub-unit" of the County of Fresno and is not a person within the meaning of § 1983); see also Sanders v. Aranas, 2008 WL 268972, *3 (the Fresno Police Department is not a proper defendant because it is a sub-department of the City of Fresno and is not a person within the meaning of § 1983). Integrated Waste Management will therefore be dismissed from this action.

As previously noted, the instant motion to dismiss seeks only the dismissal of County (and its subdivision, Waste Management). The grounds asserted by County for its dismissal implicate two issues that are novel as far as this court is concerned. The first issue is whether a convicted individual who is released to a work furlough program such as WRAP is an "employee" of the county subdivision to which she is released for purposes of the protections afforded by FEHA and Title VII. The second issue is whether a convicted individual released to a work furlough program such as WRAP is a "prisoner" within the meaning of California Government Code § 844.6. The court will consider these issues in order.

*A. Whether a WRAP Worker is an Employee*

"The existence of an employer-employee relationship is the primary element of Title VII claims." Gulino v. New York State Ed. Dept., 460 F.3d 361, 370 (2nd Cir. 2006). The definition of an "employee" is contextually driven. For example, in the context of California's Workers Compensation Act, California Labor Code section 3351 provides broadly that "Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written." California courts apply the definition of "employee" broadly in the context of workers compensation to apply beyond the

customary considerations of "contract or common law" or compensation to include persons in positions such as person "trying out" for employment, <u>Laeng v. Workmen's Comp. Appeals Bd.</u>, 6Cal.3d 771 (1972), and persons serving weekend community service in payment for traffic fines. <u>Arriaga v. County of Alameda</u>, 9 Cal.4th 1055, 1062 (1995). Outside the context of Workers Compensation, however, the definition of "employee" is considerably more restrictive.

> Title VII defines an "employee" only as "an individual employed by an employer." 42 U.S.C. § 2000(e)(f). The Supreme Court has recognized that this definition "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 [. . .] (1992) (addressing the question of whether a person was an independent contractor or an employee under ERISA). ¶ A series of supreme court decisions have established that when a statute contains the term "employee" but does not define it, a court must presume that Congress incorporated traditional agency law principles for identifying "master – servant relationships." [Citations.] It is clear that the terms "employer" and "employee" under Title VII are to be defined with reference to these common law agency principles.

<u>Lopez v. Commonwealth of Massachusetts</u>, 588 F.3d 69, 83 (1st Cir. 2009) (internal citations and footnote omitted).

Case authority has established various factors to consider in determining the existence of an employer-employee relationship, and the factors appear to vary slightly with the context in which the determination is to be made. <u>See</u>, <u>e.g.</u>, <u>Cmty. For Creative Non-Violence v. Reid</u>, 490 U.S. 202 (1989) ("<u>Reid</u>") (determining whether sculpture was an employee or independent contractor); <u>Bryson v. Middlefield Volunteer Fire Dep't</u>, 656 F.3d 348 (6th Cir. 2011 (determining whether volunteer firefighter is employee for Title VII purposes); <u>Clackamas Gastroenterology Assocs. P.C. v. Wells</u>, 538 U.S. 440 (2003) (whether physician shareholders are employees or employers for purposes of ADA). Case authority addressing the issue of factors to be considered in the context of a prisoner in a work furlough program is sparse at best. Interestingly, the only case the court has found addressing this issue comes from the Court of Federal Claims and addresses the issue of the employment status of a prisoner working for the General Services Agency ("GSA") under the auspices of Federal Prison Industries, Inc. In <u>Walton v. United States</u>, 80 Fed. Cl. 251 (2008), the plaintiff, a prisoner, created a calendar while working for GSA. The claim that arose in that case was whether the plaintiff was "in the 'employment or service of the United States'" for purposes of determination of the plaintiff's ability to assert copyright protection over the calendar that had been created. <u>Id.</u> at 271.

The key observation made by the Walton court is that a prisoner working in the context of a statutorily established work furlough plan does not have a relationship with the agency with whom the worker is placed that could be called a master-servant agency relationship. See Walton, 80 Fed.Cl. at 273-274 (noting that the fundamental characteristic of the agent-master relationship – consent – is lacking in the context of the prisoner's placement with an agency in a work furlough relationship). Although the context of the furlough placement in Walton was that of a federal prisoner placed with a federal agency, the court finds consideration of the same factors yields the same result. The case authority the court has reviewed reflects a number of factors that go to the consideration of three core issues. These three core issues, which are given varying degrees of emphasis by the various cases include: (1) the control the agency asserts over the putative employee, see Lopez, 588 F.3d at 84-85; (2) the compensation the putative employee is provided by the putative employer, see Bryson, 656 F.3d 348 at 354 (rejecting argument that compensation is a necessary precondition to the existence of employer-employee relationship and discussing its importance); and (3) the extent to which the relationship of the putative employee and putative employer arises from the consent of both to the relationship. See Walton, 80 Fed. Cl. At 274 (finding consent lacking in context of prisoner work furlough programs).

Defendant County filed a request for judicial notice to accompany its motion for dismissal. The request for summary judgment consists of the ordinance enacted by the Inyo County Board of Supervisors that establishes the WRAP program under the authority of California Penal Code §§ 4024.2 and 4024.3. Doc. # 24 at p.p. 5-9. The second document for which judicial notice is requested is a photocopy of the "Inyo County Sheriff's Work Release Alternative Program Rules and Regulations" (hereinafter "Rules") that was evidently prepared by County and provided to Plaintiff in advance of her assignment to the "Bishop Landfill" worksite. The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The court finds the documents set forth in Docket Number 24 are suitable for judicial notice. There being no objection, Defendant County's motion for judicial notice will be granted. After review of the documents provided for judicial notice, the court is convinced that the consideration of all relevant factors points to the absence of an employer-employee relationship between Plaintiff and Integrated Waste Management.

With regard to control over Plaintiff's work while participating in WRAP, such control as is asserted is asserted by the Sheriff's Department through its rules and regulations establish under WRAP; not through any relationship between Plaintiff and Integrated Waste Management. The Rules inform Plaintiff of her start date and finish date and the start times and finish times on each day of work at the site. The Rules also specify what clothes the worker will wear and what items (sunscreen, gloves, hat, etc.) must be provided by the prisoner, what items are optional, and what items or conduct are prohibited. Of particular importance with regard to the issue of control is a provision in the rules wherein the worker promises that she "will not engage in disputes with the worksite supervisor, but will report any problems or disputes to the WRAP Sergeant when practical." Doc. # 24 at 11(underline in original). Further, California Penal Code § 4024.2, which authorizes jurisdictions to establish work release programs, limits the scope of jobs that work release prisoners may participate in to "manual labor" in specified work situations that benefit public, but not private, interests. See Cal. Penal Code §§ 4024.2(b)(1)(A-F). Assignment to non-manual labor is available only to those who are physically not able to perform manual labor. See § 4024.2(b)(2). Based on the material submitted, the court finds that Integrated Waste Management had some control over the location of the work and perhaps was the "source of the instrumentalities and tools;" but had essentially no control over the duration of the relationship with Plaintiff, no right to assign additional projects, no control over the length of time Plaintiff would work, and no role in payment or collection of fees. See Reid, 490 U.S. at 751-752 (setting forth a list of eleven criteria from which the foregoing were chosen as relevant in this situation); see also, Lopez, 588 F.3d at 85 (setting forth a similar list of factors from Clackmas that, applied to the facts here, lead to the same conclusion). The court concludes that any meaningful control over Plaintiff's work was established by the Sheriff's Department pursuant to the limitations imposed by Penal Code § 4024.2, the County's implementing resolution and the Sheriff's Department's Rules; not by any relationship between Plaintiff and Integrated Waste Management. The court therefore finds that consideration of the issue of control weighs against the existence of an employer-employee relationship with regard to Plaintiff.

With regard to the issue of compensation, the documents judicially noticed establish that Plaintiff received no compensation. In fact, participants in WRAP are required to pay a $50.00 application fee and $5.00 per day participation fee. Doc. # 24 at 8. Even considering that compensation for EEOC purposes can be construed broadly to include such things as pensions,

group life or health insurance, access to professional certification, and the like, Bryson, 656 F.3d at 353, the court finds there is nothing in the relationship between Plaintiff and WRAP that could be considered as "compensation" for purposes of Title VII or FEHA claims.  While it is true that participation in WRAP does confer *benefits* in the sense of being released to home at the end of the work day and the opportunity to be more or less free during off hours, such benefits can only be considered as ancillary benefits of WRAP participation inasmuch as they may constitute a highly desirable modification of the terms of custody.  Such benefits cannot, however, be considered payment or compensation for the work performed.  The court finds that consideration of the issue of compensation weighs strongly against the existence of an employer-employee relationship between Plaintiff and County or Integrated Waste Management.

The last core issue – consent – has already been discussed to some extent.  "Consent" in the context of the common law agency refers to a relationship where "'one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control and the agent manifests assent or otherwise consents to so act.' [Citation.]." Walton, 80 Fed.Cl. at 273-274 (quoting Restatement (Third) of Agency §1.01 (2006).  Thus, the consent manifested by *both parties* must have the *objective* of establishment of a principle-agent relationship.  Consensual, in this context does not simply mean un-coerced as far a Plaintiff is concerned; it means un-coerced with the objective of *both* parties to form an employer-employee relationship.  While Plaintiff may have had that intention, it is clear that County did not establish the WRAP program for the purpose of establishing employer-employee relationships with prisoners.  The ordinance enacted by the Inyo County Board of Supervisors makes it clear that the purpose of WRAP was/is to provide the Sheriff's Department a tool to reduce jail overcrowding. See Doc. # 24 at 6 (finding the enactment is responsive to the expectation of jail overcrowding).   The court finds that the stated intention of County to use WRAP for the purpose of jail overpopulation control and not for the purpose of establishing employer-employee relationships weighs convincingly against the proposition that there was consent by the parties to form an employer-employee relationship.

The court concludes that Plaintiff's complaint does not present facts that, if proven, would show that she was an employee of either Integrated Waste Management or the County within the meaning of Title VII or FEHA.  As a consequence, Defendant County is entitled to dismissal as to Plaintiff's first, second, third and fourth claims for relief pursuant to Title VII and FEHA.

### B. Whether a Person Participating in WRAP is a "Prisoner"

The general rule of entity liability in California provides that "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code §815.2; see also Johnson v. City of Pacifica, 4 Cal.App.3d 82, 85 ((1970) (holding that liability is the rule and immunity is the exception). This general rule is subject to a number of exceptions and exceptions to exceptions. The exception on which County relies is set forth at Government Code, subsection 844.6, which provides that, except for specified exceptions not applicable here, "a public entity is not liable for: (1) an injury proximately caused by any prisoner [and/or] (2) an injury to any prisoner." Cal. Gov. Code § 844.6(a). the term "prisoner," in turn, "includes an inmate of a prison, jail, or penal or correctional facility." Cal. Gov. Code § 844. Thus, the issue of whether County is immune from claims pursuant to California law under § 844.6 turns on the question whether Plaintiff was "an inmate of a prison, jail, or penal correctional facility" during the time she worked at the landfill site. See Hart v. County of Orange, 254 Cal.App.2d 302, 306 (4th Dist. 1967) ("section 844.6 does not concern itself with either the type of duty which may be breached or with the kinds of injury which may be suffered; it concerns itself only with status as a prisoner and with injuries which, but for that status, would give rise to a cause of action").

As with the question of whether Plaintiff was an "employee" within the meaning of Title VII and FEHA, neither party has cited and the court cannot find any case authority that specifically addresses this issue in the context of a non-custodial work furlough program.

> Judicial decisions construing the definition of prisoner with sections 844 and 844.6 have focused upon the element of confinement due to court commitment or legal process. [Citations.] Thus, in *Patricia J. v. Rio Linda Union Sch. Dist.* [(1976) 61 Cal.App.3d 278,] 287 [. . .], the court concluded that a juvenile ward placed in a private was not a "prisoner" because he was not confined in a correctional facility or institution under the authority of law enforcement or legal process. For that reason, an arrestee handcuffed and restrained in a police car was held not to be a prisoner. [Citation.] The decisions also hold that the confinement or restraint may result from either court commitment or lawful process. [Citations.]

Badiggo v. County of Ventura, 207 Cal.App.3d 357 (2nd Dist. 1989).

A good deal of effort has gone into efforts to craft a definition of "prisoner" that is useful in a variety of contexts. This court's review of case authority indicates there are two prongs to

the definition. First, the individual must be confined as a result of a judicial order or a judicial process, such as trial, that authorizes a judicial order of confinement. See, Larson v. City of Oakland, 17 Cal.App.3d 91, 97 (1st Dist. 1971) (synthesizing case authority to hold that a suspect seized and handcuffed by police officer upon suspicion of vehicle theft is not a prisoner within the meaning of section 844.6 but arrestee taken to police station for booking is a prisoner). Thus, so far as the court can discern, the first prong requires a threshold, both literally and figuratively, of some process and placement in a condition of confinement pursuant to a legal process. See Lawson v. Superior Court, 180 Cal.App.4th 1372, 1384 (4th Dist. 2010) (for purposes of immunities under Tort Claims Act, "prisoner" is a person "brought into a law enforcement facility for the purpose of being booked" or who "becomes a prisoner as a matter of law upon his or her initial entry into a prison, jail, or correctional facility . . ."). There is no dispute in this case that Plaintiff was initially placed in confinement as a result of a judicial process.

The second prong addresses what is meant by confinement or, stated differently, what qualifies as a "prison, jail, or penal correctional facility." What appears crucial under the facts of this case is not the place of confinement but the nature of the confinement in which Plaintiff was placed. In Jiminez v. County of Santa Cruz, 42 Cal.App.3d 407 (1st Dist. 1974), the court held that the term "includes" in the definition of "prisoner" in section 844 indicated a legislative intent to construe the term broadly. Id. at 409. In Larson, on the other hand, the appellate court specifically rejected a broad interpretation of the term and held that "in specifying what the term 'prisoner' *includes*, in context, that which is not included is *excluded*." 17 Cal.App.3d at 97. While California courts have appeared to be conflicted with respect to the question of whether the term "prisoner" should be construed broadly or narrowly, both lines of cases appear to draw their definitions of "prisoner" from the same set of dictionary sources. See, e.g., Larson, 17 Cal.App.3d at 95-96 (referencing a number of dictionary sources to derive a definition of "prisoner" that comports with a definition "in the narrow, technical sense"); Jiminez, 42 Cal.App.3rd at 411 (recognizing and repeating the dictionary definitions from Larson to derive a definition of "prisoner" in a broader and more inclusive sense).

Rather than try to resolve the apparent discrepancy in approaches, the court focuses on the common theme recognized in both cases. In both Larson and Jiminez the dictionary definitions of prisoner contain elements reflecting both confinement of the individual against their will and the existence, if not the use, of coercive force. As set forth in Larson:

> "A 'prisoner' is a person deprived of his liberty by virtue of a judicial or other lawful process" (41 Am.Jur., p. 886, §2); any person is a prisoner who is held in confinement against his will (*United States v. Curran*, 297 F. 946); "1. A person held in custody, captivity or a condition of forcible restraint, especially while on trial or serving a prison sentence" (American Heritage Dict. Of the English Language (1969)); "1. One who is confined in a prison or whose liberty is forcibly restrained; specif., in law, a person confined in a prison by virtue of an order of arrest of a legal committal . . ." (Brit. World Lang. Ed., Funk & Wagnalls Standard Dict.); 1. One who is kept in prison or in custody; *spec.*, one who is in custody as the result of a legal process . . ." (Oxford English Dictionary 1933); "One held in confinement against his will" (3 Bouvier's Law Dict., 3rd rev. (8th ed. 1914)).

17 Cal.App.3d at 95.

While the issue is a close one, this court is of the opinion that evidence is lacking at this point to indicate that the conditions of work while participating in WRAP at the landfill site were not sufficiently confining or coercive as to qualify Plaintiff as a "prisoner" within the meaning of Cal. Gov. Code § 844 or 844.6. Although the complaint is not entirely clear on the subject, the court is left with the impression that Plaintiff drove her own car to the worksite at starting time and was at liberty to drive herself where she chose at the end of her shift. In between, there is nothing in the complaint to indicate a coercive presence of police officers, armed or otherwise. Likewise, County's pleadings tacitly acknowledge the absence of indicia of coercive confinement by basing their assertion of immunity under section 844.6 on Plaintiff's status as a convictee rather than on the conditions of her "confinement" while a participant in WRAP at the county landfill. As noted above, the Rules state that any person participating in WRAP that has a concern or complaint with working conditions is to bring such concern "to the WRAP sergeant when practical." Such wording, along with the lack of any suggestion of a coercive law enforcement presence, strongly suggest the absence of close or coercive supervision and leaves open the possibility of the absence of sheriff's department personnel for some or all of the workday.

County cites <u>People v. Bojorquez</u>, 183 Cal.App.4th (2010) for the proposition that any facility that receives inmates in a work-furlough program is a "place of confinement" within the meaning of section 844. There are two reasons for rejecting County's contention. First, the question presented in the case cited was what constitutes a "place of confinement" for purposes of violation of Cal. Penal Code § 289.6(a)(2), consensual sexual activity with a confined adult. Given the previously-discussed context-specific nature of definitions having to do with work status, the court is reluctant to transplant the holding of a California court derived from a

-11-

criminal context into a civil context without taking account of factual differences. In this regard, it is noteworthy that the Bojorquez court's decision did not rest on an analysis of common law notions of confinement, it rested on the definition of "detention facility" as set forth in the statute itself. Specifically, the Bojorquez court relied on Penal Code section 289.6(c)(2), which defined detention facility for purposes of that statute as "[a] building or facility used for the confinement of adults or adults and minors pursuant to a contract with a public entity." This definition is both broader and more specific that any of the common law analyses that have been applied to determine the scope of immunity provided by Gov. Code § 844.6. Second, the factual background in Bojorquez is distinguishable in at least one important respect from the case at bar. In Bojorquez, the participants in the work furlough program agreed to a set of rules that specified that, while working, the participant "'will be in the custody of the Orange County Sheriff's Department. Laws, rules and regulations that pertain to an in-custody inmate will apply to you . . .'" 183 Cal.App.4th at 410. The Rules signed by Plaintiff have no such recognition of in-custody status.

The court declines to apply the holding in Bojorquez to the facts of this case to reach the conclusion that the landfill site was a "detention facility" and that Plaintiff was consequently a "prisoner" within the meaning of Gov. Code §844 or 844.6.

**II. Plaintiff's Individual Claims**

*A. First and Third Claims for Relief Pursuant to Title VII*

Because the court has concluded that Plaintiff was not an "employee" within the meaning of 42 U.S.C. § 2000e, she may not maintain a suit pursuant to § 2000e-2 under theories of hostile work environment or quid pro quo sexual harassment. All Defendants are therefore entitled to dismissal of Plaintiff's first and third claims for relief with prejudice.

*B. Second and Fourth Claims for Relief Pursuant to Cal. Gov. Code §§ 12940(j) and 12940(a)*

Plaintiff's second and fourth claims for relief are alleged pursuant to FEHA for sexual harassment and sexual discrimination, respectively. The definition of "employee" for purposes of claims under FEHA is unhelpful to about the same extent as the definition of employee under Title VII. As a consequence California courts frequently look to federal case law to help in the determination of who is or is not an employee for purposes of FEHA. See Mendoza v. Town of Ross, 128 Cal.App.th 625, 635-636 (2005) (referencing Title VII and Community for Creative Non-Violence v. Reid, 490 U.S.730 (1989) for guidance on determination of employer-employee

status determination for purposes of FEHA). The court finds that the conclusion it reached with regard Plaintiff's status as an employee for purposes of Title VII applies equally to the same determination in the context of FEHA. The court therefore finds that, because Plaintiff was not an employee for purposes of FEHA, all Defendants are entitled to dismissal of Plaintiff's second and fourth claims for relief with prejudice.

### C. Claim for Violation of Fourteenth Amendment Pursuant to 42 U.S.C. § 1983

Plaintiff's fifth claim for relief alleges violation of Plaintiff's substantive due process rights under the Fourteenth Amendment. County seeks dismissal of Plaintiff's fifth claim for relief on the ground that Plaintiff failed to plead facts to support a claim under Monell against County. Plaintiff opposes County's motion by pointing out that the complaint as a whole does allege facts to support entity liability under Monell under a theory of failure to adequately supervise. Both parties are correct. The complaint does allege facts sufficient to sustain a claim for entity liability for failure to adequately supervise. However, those facts are not incorporated into Plaintiff's fifth claim for relief. The only mention of County in the context of Plaintiff's fifth claim for relief is the allegation that Mayhugh functioned as an agent of County. That statement, without more, fails to allege an adequate basis of liability as to County and fails to provide a basis for adequate notice of the claim against County in violation of Rule 8 of the Federal Rules of Civil Procedure. Plaintiff's fifth claim for relief will be dismiss as to County only but, because the defect in Plaintiff's claim can be cured by re-pleading, leave to amend will be granted.

### D. Plaintiff's Claim Under the Unruh Civil Rights Act.

Defendant County seeks dismissal of Plaintiff's sixth claim for relief pursuant to the Unruh Civil Rights Act, Cal. Civ. Code § 51.9 on the ground the relationship between Plaintiff and Defendants is not encompassed by the statute cited. Defendant County is correct. The relationships to which section 51.9 applies are business, service and professional relationships that are outside of the realm of employee-employer relationships. Examples provided by the statute include physician, attorney, teacher, property manager and the like. See Civ. Code §§ 51.9(a)(1)(A-F). The court agrees that the cited statute is not intended to encompass the relationship between Plaintiff and County or Plaintiff and Integrated Waste Management. Plaintiff has failed to provide any case authority to the contrary. Plaintiff's sixth claim for relief will therefore be dismissed with prejudice.

In dismissing Plaintiff's claim under section 51.9 with prejudice, it is not the court's

intention to indicate that there are no related statutory bases for asserting a claim under state law for what amounts to sexual battery. For example, because the court is granting permission to otherwise amend the complaint, Plaintiff is not prevented from asserting a state claim under Cal. Civ. Code § 52.4 for damages arising from gender violence.

### E. Claim for Intentional Infliction of Emotional Distress

As noted by County, the Eleventh Amendment provides that a suit by and individual may not be had against a state or political subdivision thereof except to the extent specifically permitted by the state. Pursuant to California Government Code § 815, claims against subdivisions of the state are not allowed except as specifically provided by statute. A claim for intentional infliction of emotional distress is a common law claim, not a statutory claim. The court notes that Plaintiff does not oppose County's motion to dismiss Plaintiff's seventh claim for relief. Plaintiff's seventh claim for relief will therefore be dismissed with prejudice as to County only.

THEREFORE, in accord with the foregoing discussion, it is hereby ORDERED that:

1. Plaintiff first, second, third and fourth claims for relief are hereby DISMISSED as to all Defendants with prejudice.
2. Plaintiff's fifth claim for relief is hereby DISMISSED as to County only. Leave to amend is GRANTED.
3. Plaintiff's sixth claim for relief is hereby DISMISSED as to all Defendants with prejudice.
4. Plaintiff's seventh claim for relief is hereby DISMISSED as to County only with prejudice.
5. Any amended complaint shall be filed and served not later than twenty-one (21) days from the date of service of this order.

IT IS SO ORDERED.

Dated:   July 31, 2014                                     _____
                                                                                 SENIOR DISTRICT JUDGE